IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK C. VALENZUELA,<br><br>              Plaintiff,<br><br>       v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>              Defendant. | Case No.: 10-cv-4426 JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt Nos. 13, 19)** |

Plaintiff Mark C. Valenzuela brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by Defendant Michael J. Astrue, the Commissioner of the Social Security Administration, denying him disability benefits. Pending before the Court are Plaintiff's Motion for Summary Judgment (Dkt. No. 13) and Defendant's Cross-Motion for Summary Judgment (Dkt. No. 19). For the reasons set forth below, the Court GRANTS Valenzuela's motion for summary judgment in part and DENIES Defendant's cross-motion for summary judgment and remands for a new hearing consistent with this Order.[1]

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

**BACKGROUND**

**A.     Procedural History**

Plaintiff Mark Valenzuela filed an application for social security disability insurance benefits under Title II of the Social Security Act and for supplementary security income payments under Title XVI of the Social Security Act on June 11, 2007. His application was initially denied by the Social Security Administration ("SSA") and also on reconsideration and reopening. He then timely filed a request for a hearing before an administrative law judge ("ALJ").

On April 13, 2010, Valenzuela, represented by attorney Marc Gonzalez, appeared for his hearing before ALJ Timothy Stueve in Oakland, California. Valenzuela and vocational expert Dr. Bellicheck testified during the hearing.[2] On May 14, 2010, the ALJ issued a written decision denying Valenzuela's application and finding that Valenzuela was not disabled within the meaning of the Act and regulations. Valenzuela timely filed a request for review, but the Appeals Council denied review.

**B.     Relevant Factual Background**

Plaintiff Valenzuela, now 63, alleges that he has heart problems, Hepatitis C, angina, depression, and anxiety. See Administrative Record ("AR") 99. He also contends that he has back and hip pain, degenerative joint disease and claudication in his lower limbs. AR 99, 417. Based on these conditions, Valenzuela's treating physician, Dr. Vanieda White, found that he has limitations on his ability to lift objects, sit, engage in postural activities, and operate foot pedals, and thus, recommended that Valenzuela perform less than light work. AR 407-413.

Valenzuela is currently attending Merritt College studying environmental studies. AR 445-446. His only income is from general assistance and some financial aid that he receives for school. AR 446. He does not have medical insurance so he goes to Life Long Clinic, a free medical clinic in Oakland, California. AR 446. Valenzuela has been receiving

---

[2] The ALJ's decision incorrectly identifies Mary R. Ciddio as the vocational expert.

treatment at the clinic, primarily from Dr. Vanieda White, since 2007. AR 455. During this time, Valenzuela has been seen for back and hip pain, claudication, Hepatitis C and prostate problems. AR 276, 291-292, 297, 313-316. For the back and hip pain he takes half a Vicodin once a day. AR 240. In 1992, Valenzuela had bypass surgery and he experiences ongoing issues with angina as a result of his heart problems for which he seeks treatment from a cardiologist in the emergency room at Highland Hospital on an as needed basis. AR 449-451.

Valenzuela stopped working in 2005 because of physical and mental health issues. AR 99. His most significant recent employment was from 2001-2003 working as a chauffeur for Diva Limousine. AR 100, 447. He did not have a commercial license. AR 447. He was on call 24/7 chauffeuring people around in a town car. AR 447, 453. Valenzuela stated that this work involved helping people with their bags, but "it wasn't really hard."[3] AR 447-448. However, he found the job stressful because he was on call all the time and it affected his heart condition. AR 453. He was laid off from this job and then hurt his back so he was unable to return to this line of work. AR 453.

The record contains some evidence regarding Valenzuela's back and hip problems. For example, a July 26, 2007 Xray indicated that Valenzuela had vascular clips on his hips, but no degenerative changes were seen. AR 359. Also, on November 13, 2009, Valenzuela had a CT scan which showed that he had board-based disc herniation present at L3-4 and disc bulging at L4-5, both without significant central canal stenosis and no significant osteoarthritic changes in the hip joints. AR 415. Plaintiff's primary care physician, Dr. White, completed a form indicating that his physical capacity for lifting, sitting, standing and walking was limited. Dr. White recommended that Valenzuela: 1) never lift more than 20 pounds and that he only occasionally lift 11-20 pounds; 2) only sit for 5-10 minutes at a time, stand for 10-15 minutes at a time, and walk 30 minutes at a time with not more than 60 minutes spent sitting, 90 minutes spent standing, and 75 minutes spent walking within an

---

[3] In his written application, Valenzuela stated that as part of his job responsibilities he had to lift suitcases from the car to curb or curb to car and that they frequently weighed 50 pounds or more. AR 101.

3

1  eight-hour workday; 3) never climb stairs, ramps, or ladders, balance, stoop kneel, crouch or
2  crawl; and 4) never use foot controls with his right foot and only occasionally use them with
3  his left foot.  AR 707-412.  At the hearing, Valenzuela testified that his back pain is
4  constant, it's generally at a five on a scale of one to ten, but if he sits for too long his back
5  locks up and the pain increases.  AR 454, 464.  He has seen a chiropractor for his back pain,
6  and it temporarily improves, but then it acts up again and he is incapacitated.  AR 462.
7  Valenzuela testified that his hip pain comes and goes and is aggravated by walking on an
8  incline or up stairs. AR 452.

## STANDARD OF REVIEW

This Court's jurisdiction is limited to determining whether the Social Security Administration's denial of benefits is supported by substantial evidence in the administrative record.  See 42 U.S.C. § 405(g).  A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallenes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F.3d at 1039. Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ.  See id.; Magallenes, 881 F.2d at 750. The decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1040.

## DISCUSSION

A claimant is entitled to disability insurance benefits if he can demonstrate that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1).  The ALJ conducts a five-step sequential inquiry to determine whether a claimant is entitled to benefits.  20 C.F.R. § 416.920.  At the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful

activity (i.e., if the plaintiff is currently working); if the claimant is not engaged in substantial gainful activity, the second step asks if the claimant has a severe impairment or combination of impairments (i.e., an impairment that has a significant effect on the claimant's ability to function); if the claimant has a severe impairment, the third step asks if the claimant has a condition which meets or equals the conditions outlined in the Listings of Impairments in Appendix 1 of the Regulations (the "Listings"); if the claimant does not have such a condition, the fourth step assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work; if the claimant is not capable of performing his past relevant work, the fifth and final step asks whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. Id. §§ 404.1520(b)-404.1520(f)(1).

The dispute in this case concerns the ALJ's findings at step four. "At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work either as actually performed or as generally performed in the national economy." Carmickle v. Comm'r, 533 F.3d 1155, 1166 (9th Cir. 2008) (internal citations and quotations omitted). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). At this stage, the ALJ must make specific findings regarding "(1) the claimant's residual functional capacity ("RFC"), (2) the physical and mental demands of the past relevant work, and (3) the relation of the residual functional capacity to the past work." Pinto, 249 F.3d at 845; 20 C.F.R. § 416.920(e)-(f). The ALJ then determines whether, in light of the claimant's RFC, he can return to the substantial gainful activity performed in the past. See 20 C.F.R. § 404.1520(e).

Here, Valenzuela challenges the ALJ's RFC determination, the determination that he was able to return to substantial gainful activity in his past work as a driver, and the finding that he was not entirely credible. The Court considers each of these arguments in turn.

### A.     The ALJ's Findings Regarding Valenzuela's RFC

In determining residual functional capacity, "the ALJ must consider whether the aggregate of [Valenzuela's] mental and physical impairments may so incapacitate him that he is unable to perform available work." Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). An ALJ's determination of a claimant's RFC will be affirmed if the ALJ applied the proper legal standard and his decision is supported by substantial evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

The ALJ found that Valenzuela had the following RFC:

> to perform less than a full range of light work with occasionally lifting twenty pounds, and frequently lifting ten pounds; sit for up to six hours; stand or walk for approximately six hours in an eight-hour workday with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasional foot control operations bilaterally; avoid concentrated exposures to extreme cold, heat, and excessive vibration; and work which allows a one minute rest period every hour to shift position to alleviate hip pain.

AR 17. Valenzuela argues that the ALJ's determination of his RFC was legally flawed because he failed to incorporate Valenzuela's inability to operate foot controls, need to sit for less time, and his mental health restrictions. Resolution of this issue turns on the ALJ's rejection of the opinion of Valenzuela's treating physician.

"The ALJ must either accept the opinions of [claimant's] treating physicians or give specific and legitimate reasons for rejecting them." Embrey v. Bowen, 849 F.2d 418, 422 n.3 (9th Cir. 1988). Valenzuela's treating physician, Dr. White, found that he could only sit for sixty minutes out of an eight-hour day and that he could only sit for five to ten minutes without interruption. AR 408. Dr. White further found that Valenzuela could never operate foot controls with his right food and only occasionally with his left. AR 409. The ALJ disregarded Dr. White's recommendation and instead relied on the consultative examinations of Dr. Clark Gable and Dr. Frank Chen, performed at the request of the Administration, which found that Valenzuela could sit for up to six hours a day with normal breaks and did not recommend any manipulative or postural limitations. AR 240-242, 307-309. The ALJ also relied on the opinions of the State Agency medical consultants who, with the exception

of Dr. Sheehy,[4] reached conclusions similar to those of Dr. Gable and Dr. Chen. AR 217-227, 248-249, 310-312.

The ALJ stated that he gave substantial weight to the findings of the Agency medical advisors and the consultative examinations of Dr. Gable and Dr. Chen over those of Dr. White because their reports were comprehensive and their assessments were well explained, and supported by objective findings. AR 23. In contrast, the ALJ found Dr. White "did not provide functional limitations and/or restrictions based on the claimant's alleged impairments nor were their assessments supported by the clinical and laboratory findings. The limitations imposed by the treating physicians were extreme and inconsistent with the weight of longitudinal evidence, including Xray findings." AR 23.

The Court reviews the ALJ's decision to reject the opinion of Valenzuela's treating physician for substantial evidence. "Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (internal citations omitted).

### 1. Plaintiff's ability to use foot controls

Plaintiff objects to the ALJ's finding that he could use foot controls occasionally. Plaintiff alleges that his claudication limits his ability to use foot controls as is reflected in Dr. White's recommendation that he never use foot controls with his right foot and only use foot controls with his left foot occasionally. However, Dr. White's recommendation does not appear to be based on clinical or laboratory findings in the record. Nor was it based on Valenzuela's self-described limitations – Valenzuela testified that he does not drive because

---

[4] Dr. Sheehy, on the other hand, found that Valenzuela was limited to occasional push pull with his legs, and that he could sit for six hours out of an eight hour workday, but he might need a brief one minute rest break every hour. AR 324.

7

1   he does not have a car and he does not know if he would have problems driving.  AR 458,
2   463-64.
3          Further, the report from the vascular clinic where Valenzuela was sent for evaluation
4   of his claudication in December 2008 did not recommend any limitations arising from the
5   claudication.  Indeed, the report stated that he had no pain at the time of the exam, occasional
6   intermittent rest pain, and no complaints of any pain with movement.  AR 417.  The only
7   other recommendation in the record restricting activity based on claudication was that of Dr.
8   Sheehy, which recommended that Valenzuela be limited to occasional push pull with both
9   legs, and this is the recommendation that the ALJ followed.  AR 324.  Accordingly, the
10  ALJ's finding that Valenzuela could use foot controls with both feet occasionally is
11  supported by substantial evidence.

### 2. Plaintiff's ability to sit for extended periods of time

13         Plaintiff also objects to the ALJ's finding that he could sit for six hours out of an eight-
14  hour workday.  The ALJ declined to follow Dr. White's recommendation that Valenzuela be
15  limited to sitting for up to sixty minutes in an eight hour day taking breaks from sitting every
16  five to ten minutes.  Plaintiff alleges that this recommendation was supported by the evidence
17  in the record that he has vascular clips, claudication and degenerative joint disease and
18  degenerative changes in the lumbar spine and that he has been told to "respect his limits"
19  citing AR 359, 417, 415, 421, 429, 436.  However, half of those record citations, including
20  the recommendation that he respect his limits, relate to his angina and heart condition.  See
21  AR 421, 429, 436.  The July, 26, 2007 Xray of Valenzuela's hips showed "no acute findings"
22  with respect to his hips, and although vascular clips were present in the left groin and thigh,
23  "no degenerative changes [were] seen."  AR 359.  Similarly, the CT Scan from November 13,
24  2009 showed: normal lumbar lordosis, no vertebral body compression fractures or
25  subluxations, no bony central canal stenosis, no significant osteoarthritic changes were
26  identified involving the hip joints, mild disc herniation at L3-4 without significant central
27  canal stenosis, and disc bulging at L4-5 with mild facet hypertrophic osteoarthropathy without
28  significant canal stenosis or neural foraminal narrowing.  AR 415.  Further, as discussed

1  above, the report from the vascular clinic regarding his claudication indicated that there was
2  "no area of concern" and that he only complained of "occasional intermittent rest pain."  AR
3  417.  Finally, Valenzuela himself testified that he can sit, but he needs to change position to
4  make sure his back does not lock up.  AR 464.

5        The above evidence supports the recommendations of Dr. Chen, Dr. Gable and Dr.
6  Sheehy that Valenzuela could sit for up to six hours, rather than Dr. White's limitations of
7  walking, sitting or standing for a total of 3.75 hours every day.  There is thus substantial
8  evidence to support the ALJ's finding that Valenzuela could sit for six hours out of an eight-
9  hour workday provided he be able to take one minute rest periods every hour.

### 3. Plaintiff's depression

Finally, Valenzuela objects to the ALJ's determination that his depression does not cause any limitation in his ability to perform basic work activity and was non-severe.  AR 17.  Given that the only evidence of Valenzuela's depression in the record is occasional reference to him feeling anxious and having difficulty sleeping as a result of nightmares regarding his incarceration, the ALJ's decision to not incorporate any limitations stemming from his depression in the RFC is supported by substantial evidence.

### B.  The ALJ's Questioning of the Vocational Expert

"In making disability determinations, the Social Security Administration relies primarily on the Dictionary of Occupational Titles ("DOT") for 'information about the requirements of work in the national economy.'"  Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting SSR 00-4p at 2).  The ALJ can also rely on testimony from a vocational expert, but that testimony should be consistent with the DOT.  Indeed,

> before relying on VE or VS evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT) . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved.

Soc. Sec. Rul. 00-04p (2000), 2000 WL 1898704.  Accordingly, the adjudicator should "ask the vocational expert if the evidence he or she has provided is consistent with the Dictionary

9

of Occupational Titles and obtain a reasonable explanation for any apparent conflict." Massachi, 486 F.3d at 1152-53; see also Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[I]n order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation").

Here, the DOT lists "[c]ontrolling operations of equipment or systems" as skill that a driver must possess. See DOT 97114. However, the ALJ found that Valenzuela's RFC limited him to "occasional foot controls bilaterally" and specifically included this limitation in the hypothetical posited to the VE.

> ALJ: Second hypothetical, again assuming a person of the claimant's age, education and work experience. This time lifting up to 20 pounds occasionally, lifting or carrying 10 pounds frequently and standing or walking for six and sitting for approximately six hours per eight-hour day with normal breaks. Again with that ability to take a rest period one minute every hour to relieve the hip and thigh pain… **_Occasional foot control bilateral_**, occasional ramps or stairs, no ladders, ropes or scaffolds… limits on concentrated exposures to extreme cold, heat and vibration. So the same in all respects to hypothetical one except for shifting from medium down to light work.
> VE: It wouldn't change the answer.
> ALJ: Still could do the past work.

AR 467 (emphasis added).

Nothing in the record explains how a driver can control the operation of the vehicle if he can only use the foot controls occasionally. There was no evidence in the record that Valenzuela had, in fact, driven; to the contrary, he testified that he took the bus. AR 458-59. Nevertheless, the ALJ did not question the vocational expert on how he could reconcile Valenzuela's limited ability to use foot controls with the necessity that he be able to use foot controls as a driver. See McClesky v. Astrue, 606 F.3d 351, 354 (7th Cir. 2010) (describing the ALJ's failure to reconcile a similar discrepancy between the DOT and the vocational expert's testimony as "a gaping hole in the record [that] was never filled"). In this regard, the ALJ failed to comply with SSR 00-4p.

In addition, the ALJ's questioning of the vocational expert regarding the RFC limitation requiring breaks every hour was incomplete. Both Valenzuela's treating physician, Dr. White, and the Agency's non-examining consultant, Dr. Sheehy,

10

1    recommended that Valenzuela be given breaks to shift position to relieve hip and back pain.
2    AR 324, 408.  The ALJ seems to have based his RFC, at least in part, on Dr. Sheehy's
3    recommendation that Valenzuela have a rest period every hour to allow him to shift position
4    to alleviate pain as necessary.  However, it is not clear from the record what the rest period in
5    the RFC involves.
6         In response to a question from the vocational expert regarding whether the rest period
7    meant "shifting positions" the ALJ stated "I'm not talking about lying down.  Sitting,
8    standing, walking."  AR 467.  The vocational expert found that an individual could perform
9    the job of a driver even with this limitation.  AR 467.  But in response to questioning from
10   Plaintiff's counsel regarding whether an individual could perform the job of a driver if he
11   needed to take a five minute rest period every hour and "pull over, stop the car and take that
12   period as a break," the vocational expert stated that  "[p]ulling over for any length of time on
13   a continuous basis would not fit that protocol [of the job as generally performed in the
14   national economy and] would create a serious problem and in my opinion it would probably
15   eliminate that work."  AR 468-469.  This line of questioning leaves unresolved the crucial
16   issue of whether someone with a RFC such as Valenzuela's who needed to shift position
17   either while sitting, or via standing (requiring him to pull over the vehicle), or via walking
18   (also requiring him to pull over the vehicle) could perform the job of a driver.  Thus, in this
19   respect as well, the Court is unable to determine if the ALJ properly relied upon the
20   vocational expert's testimony.
21        Accordingly, the Court finds that the ALJ failed to provide an explanation as to how
22   the vocational expert's testimony was consistent with either the DOT or the articulated RFC.
23   In sum, the ALJ 1) failed to explain the discrepancy between the DOT and the vocational
24   expert's testimony regarding an individual's ability to perform the work of a driver with only
25   occasional bilateral foot control, and 2) failed to clarify whether an individual could perform
26   the job of a driver if the individual needed "rest periods" every hour.
27        In light of these issues, the Court finds that there are too many gaps in the record to
28   support the ALJ's conclusion that "in comparing the claimant's residual functional capacity

11

1  with the physical and mental demands of [his past relevant] work . . .claimant is able to
2  perform [the work] as actually and generally performed." AR 23.  In this situation, remand
3  for "enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593
4  (9th Cir. 2004) (internal citation omitted).  Accordingly, the Court remands this case to the
5  Commissioner so that the ALJ can adhere to SSR 00–4p and determine: (1) whether the
6  DOT requirements for the jobs recommended by the vocational expert are consistent with
7  Plaintiff's limitations; and (2) whether there is a reasonable explanation for any
8  inconsistencies between the vocational expert's testimony and the DOT.

        **C.**    **The ALJ's Credibility Finding**

Valenzuela also challenges the ALJ's finding at step four that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning intensity, persistence and limiting effects of these symptoms are not entirely credible." AR 22.   The Court concludes that any error regarding the credibility findings did not affect the ALJ's RFC determination.  Nonetheless, because the Court is remanding this case for enhancement of the record, it will address Plaintiff's objection.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).   First, the ALJ must decide whether the claimant has offered objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted).   Second, if the claimant has satisfied the first prong, and there is no evidence of malingering, the ALJ can reject claimant's testimony "only by offering specific, clear and convincing reasons for doing so." Somlen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).   The court may not second-guess the ALJ's credibility finding if it is supported by substantial evidence. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ concluded that although there was evidence in the record which would support Valenzuela's symptoms, the extent of the pain Valenzuela articulated was not supported by the record. However, "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Because Plaintiff has offered sufficient evidence to support the first prong, and there is no evidence of malingering, the question becomes whether the ALJ offered clear and convincing reasons for rejecting Valenzuela's testimony regarding the extent of his hip and back pain. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). "It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." Id.

> When weighing a claimant's credibility the ALJ may consider:
>
> (1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal citation omitted).

Here, the ALJ stated that "after considering the evidence in the record" he found that Plaintiff was not entirely credible, but he did not identify which evidence led him to this conclusion. AR 22. As a result, the Court can only speculate as to the evidence on which he based his adverse credibility finding. The Court concludes that the finding could not have been based on the evidence of Valenzuela's daily activities, which include: attending school, watching sports, going to church, visiting the library, and using the bus for transport.[5]  AR 22.

---

[5] There was also some discussion regarding Valenzuela's drinking habits. The ALJ's factual findings include a statement that Valenzuela "usually has a glass of wine with dinner;" however, Valenzuela testified that "if I have a good meal I'll get a bottle of wine." Compare AR 22 with AR 459. Because the Court finds that the ALJ's adverse credibility finding was not supported by substantial evidence, the Court finds it unnecessary to reach this particular component of the ALJ's determination.

13

These activities are consistent with Valenzuela's statements regarding his back and hip pain. He testified that he is able to walk a couple of blocks, but then would need to stop and rest; he can stand, but he needs to be constantly moving so his back does not lock up; and he can sit, but he needs to change position frequently so as to not irritate his back and risk becoming bedridden. AR 455, 456, 464. Valenzuela's generally low-level daily activities are compatible with his physical limitations. See, e.g., Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes).

Similarly, the ALJ could not have based his adverse credibility on the fact that Valenzuela did not receive ongoing treatment for his medical conditions. The ALJ cited the following factors in support of his decision that there is "scant objective evidence to support a conclusion of disability:" 1) Valenzuela's medical interactions over the past several years were for "routine care," 2) Valenzuela's angina was controlled through medication, and 3) Valenzuela had not received treatment for Hepatitis C. AR 22. However, Valenzuela is uninsured and thus goes to a free clinic for his medical needs rather than a primary care doctor or a specialist. AR 446. "[Valenzuela's] failure to receive medical treatment during the period that he had no medical insurance cannot support an adverse credibility finding." Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007). Indeed, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995).

In light of the above, the Court finds that the ALJ's general adverse credibility finding was not supported by clear and convincing evidence. The ALJ neither pointed to specific evidence to support his adverse credibility finding, nor did he point to evidence which suggested that Valenzuela's pain complaints were not credible. See Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

14

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment (Dkt. No. 13) is GRANTED IN PART and Defendant's cross motion for summary judgment (Dkt. No. 19) is DENIED. The Court REMANDS this case to the Commissioner for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: November 16, 2011

                                              JACQUELINE SCOTT CORLEY
                                              UNITED STATES MAGISTRATE JUDGE